UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>CONNIE WILSON,<br><br>　　　　　　Defendant. | CR. 17-50142-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant Connie Wilson, appearing *pro se*, filed a motion for compassionate release.  (Docket 93).  Pursuant to Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Ms. Wilson's motion.  (Dockets 79 & 94).  For the reasons stated below, defendant's motion is denied.

**STANDING ORDER 23-02**

Standing Order 23-02,[1] captioned "Revising the Procedure for Compassionate Release Motions Under the First Step Act," "revis[ed] the procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)."  (SO 32-02).  Under the

---

[1]See https://www.sdd.uscourts.gov/content/standing-order-23-02-revising-procedure-compassionate-release-motions-under-first-step-act ("SO 32-02").

order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act.  If the FPD believes itself to have a conflict of interest or other inability to represent a person who qualifies under (a) and (b) above, the FPD shall notify the magistrate judge in the division where the case is pending so that the magistrate judge may consider the appointment of a CJA panel attorney."  Id. ¶ 1.

## FACTUAL BACKGROUND

Ms. Wilson pled guilty to assault of a federal officer in violation of 18 U.S.C. §§ 111(a) and 111(b), and discharge of a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (Dockets 53 & 57).  On November 20, 2018, Ms. Wilson was sentenced to time served on the assault charge and 120 months on the discharge of a firearm charge, followed by three years of supervised release.  (Dockets 72 & 74 at pp. 2-3).  A presentence investigation report ("PSR") ordered by the court indicated Ms. Wilson's guideline range was 46 to 57 months of imprisonment based on a total offense level of 19 and her criminal history category IV; however, a ten-year minimum mandatory consecutive sentence was required for the firearm offense.  (Docket 65 ¶ 85).  The court sentenced Ms. Wilson to the mandatory minimum 120-month sentence.  (Docket 74).

2

Ms. Wilson is currently an inmate at FMC Carswell, an administrative security medical center with an adjacent minimum security camp, in Fort Worth, Texas.  See Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last checked May 17, 2023).  Her scheduled release date is April 20, 2027.  Id.

## MS. WILSON'S CLASSIFICATION

On August 28, 2020, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion.  (Docket 78).  They jointly "agree that this case should be categorized as a Low Priority case."  Id.

## ANALYSIS

### A. Legal Standard

Because sentences are final judgments, a "court may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  In 2018, Congress passed the First Step Act ("FSA"), which amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release.

Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i).  Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety

3

of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."
U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018).  The inmate bears the
burden to establish that compassionate release is warranted.  United States v.
Jones, 836 F.3d 896, 899 (8th Cir. 2016).  The district court is not required to
investigate possible avenues for relief or to develop the record in support of a
motion.  United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant
compassionate release based on "extraordinary and compelling reasons."
Congress did not define what constitutes "extraordinary and compelling."
28 U.S.C. § 994(t).  Rather, the Sentencing Commission was directed to
promulgate "the criteria to be applied and a list of specific" extraordinary and
compelling examples.  Id.  Prior to Congress passing the FSA, the Sentencing
Commission limited "extraordinary and compelling reasons" to four scenarios
which are the consideration of the defendant's (1) terminal illness,
(2) debilitating physical or mental health condition, (3) advanced age and
deteriorating health in combination with the amount of time served and
(4) compelling family circumstances.  Id.  There is a fifth catch-all category for
an "extraordinary and compelling reason other than, or in combination with,
the reasons described" as determined by the Director of the Bureau of Prisons.
U.S.S.G. § 1B1.13 cmt. n.1(D).  These categories have not been updated since
December 2018 when FSA became law.

As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies.  See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence").  The purpose of the First Step Act is to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.  It is clear Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission.  See 18 U.S.C. § 3582(c)(1)(A).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Ms. Wilson requested compassionate release from Carswell FMC's Warden in June 2020.  (Docket 94 at p. 491).  The Warden denied Ms. Wilson's motion because she failed to provide documentation that the child at issue is her child or verifiable medical information that the caregiver is incapacitated.

Id. at pp. 492 & 493.  Ms. Wilson exhausted her administrative remedies; accordingly, the court will address the merits of her motion.

## B. **Defendant's Motion for Compassionate Release**

On August 25, 2020, Ms. Wilson first sought compassionate release on the basis of extraordinary and compelling reasons in light of her family circumstances.  (Docket 77 at pp. 1-2).  The court found, despite the expanded availability of compassionate release under the First Step Act, no extraordinary or compelling reason to warrant Ms. Wilson's early release.  (Docket 90 at p. 7).

In Ms. Wilson's second motion she seeks relief on the same basis, that her "son Tim has Epilepsy, and he is mentally impaired.  He is unable to take care of himself, [her] sister RoMona can no longer assist with helping out with [her] children.  She was diagnosed last week with a brain tumor, and she really needs [her] help."  (Docket 93 at p. 5).  Ms. Wilson fails to provide documentation in support of her son or RoMona's health conditions.

Ms. Wilson submitted a letters from her sisters, RoMona and Saunie, supporting her claim that she is needed to care for her family.  (Docket 93-1 at pp. 29-30 & 31-32).  RoMona's letter states that she "has been recently diagnosed with Chrons disease which ultimately leads to colon cancer;" it states noting about her having a brain tumor.  Id. at pp. 29-30.  RoMona further states "Connie[']s son Timothy has had brain surgery and although an[] adult can not live independently."  Id. at p. 30.  It also notes Tim's child has

been placed in foster care as the child's mother is not in the child's life, and Timothy is not able to care for himself or the child.  Id.

Ms. Wilson's PSR details that prior to her arrest, she was responsible for taking care of Timmy's son, K.S., who is 18 months old, due to Timmy's seizure disorder.  (Docket 65 ¶ 63).  After her arrest, Alycia, Ms. Wilson's daughter, took custody of K.S.  Id.  There is no evidence provided as to why Alycia cannot continue to care for K.S.

The court does not find Ms. Wilson's family situation to be an extraordinary and compelling reason that justifies compassionate release.

Next, Ms. Wilson asserts she should be released due to her rehabilitative efforts, including completing a housekeeping apprentice, an 18-month Life Connections Program and her ability to work.  (Docket 93 at p. 5).

Because the FSA changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges."  United States v. Hodgin, No. 4:15-CR-40110-02, 2021 WL 928179, at *3 (D.S.D. Mar. 11, 2021) (quoting United States v. Condon, 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020)).  Although the court is allowed to determine if a situation fits under the catch-all exception, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" to justify compassionate release.  United States v. Brown, 457 F. Supp. 3d 691, 701 (S.D. Iowa 2020) (quoting 28 U.S.C. § 994(t)).  "For the word 'alone'

to do any work—as it must—that means courts can consider rehabilitation as part of a compassionate release motion." Id.; See also United States v. Contreras, 504 F. Supp. 3d 1052, 1060 (D.S.D. 2020) (The Sentencing Commission recognizes that rehabilitation cannot be the sole factor for compassionate release.). The court explained why compassionate release is not justified due to Ms. Wilson's family circumstances, leaving rehabilitation as the sole ground for release. Because rehabilitation alone cannot justify compassionate release, Ms. Wilson's motion is denied.

### C. **3553(a) Factors**

The 18 U.S.C. § 3553(a) sentencing factors further show compassionate release is not warranted. The factors are:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed—

   a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   b. to afford adequate deterrence to criminal conduct;

   c. to protect the public from further crimes of the defendant and

   d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

The 3553(a) factors also counsel against early release. The nature and circumstances of Ms. Wilson's offense were serious and potentially deadly.

> In connection with an investigation into a stolen vehicle, officers arrested Ms. Wilson, handcuffed her behind her back and placed her in the rear passenger compartment of a police car. Officers continued their investigation and observed a Savage Axis bolt action .223 rifle inside Ms. Wilson's residence. The officers removed the rifle from the residence and placed the rifle in the rear cargo compartment of police car. Ms. Wilson removed her left handcuff, broke a plastic partition and entered into the rear cargo area. She grabbed cans of beer and drank some. She retrieved the rifle and loaded it. Officers opened the police car door and Ms. Wilson pointed the rifle in their direction and screamed that she would shoot the officers. Directly after the incident, she told the officers, she "should have shot you in the f***ing head . . . Now I'm gonna kill you guys." While at the Pine Ridge Jail, Ms. Wilson was given a preliminary breath test which registered .235%.

(Docket 65 ¶ 5 (modified)). Ms. Wilson attributes her actions to drugs and alcohol. Id. ¶ 14.

Ms. Wilson has an extensive history of disorderly and reckless conduct. Id. ¶¶ 28-41. The court commends Ms. Wilson for her good conduct while incarcerated and taking advantage of the available programming and encourages her to continue along that path. (Docket 79 at pp. 257-58). The 3553(a) factors do not support her early release.

**ORDER**

Based on the above analysis, it is

ORDERED that defendant's motion for compassionate release (Docket 93) is denied.

Dated July 17, 2023.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

9